UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TRUSTEES of the LOCAL 1034 PENSION
TRUST FUND,

                    Plaintiffs,

     -against-

N. CANCRO, INC. d/b/a CANCRO FUNERAL
HOME INC.; XYZ CORPORATIONS 1-10; and
JOHN AND JANE DOES 1-10,

                  Defendants.
------------------------------------------------------------X

REPORT AND
RECOMMENDATION

18 CV 7412 (CBA)(RML)

LEVY, United States Magistrate Judge:

       By order dated July 3, 2019, the Honorable Carol Bagley Amon, United States

District Judge, referred plaintiffs' motion for a default judgment against defendant N. Cancro,

Inc. d/b/a Cancro Funeral Home Inc. ("defendant" or "Cancro") to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that plaintiffs' motion

be granted and that plaintiffs be awarded $263,622.04.

## BACKGROUND AND FACTS

       Plaintiffs are trustees (the "Trustees") of the Local 1034 Pension Trust Fund

("plaintiffs" or the "Fund"), a jointly-administered multiemployer employee benefit plan.  They

bring this action pursuant to section 4301 of the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1451.  (Complaint, dated Dec. 28, 2018 ("Compl."), Dkt. No. 1, ¶¶

2, 6-7.)  Plaintiffs seek to recover withdrawal liability that they allege Cancro owes to the Fund,

as well as accrued interest, liquidated damages, attorney's fees, and costs.[1]  (Id. ¶¶ 1-2.)  Cancro

---

[1]  Although their complaint names anonymous defendants XYZ Corporations 1-10 and John and
Jane Does 1-10, plaintiffs have never identified or sued any defendants other than Cancro.

is a for-profit domestic corporation with its principal place of business in New York State.  (Id. ¶ 8.)

Cancro entered into a collective bargaining agreement (the "CBA") with the International Brotherhood of Teamsters, Local Union No. 813, with respect to which the Fund is a third-party beneficiary.  (Id. ¶ 12.)  The CBA required Cancro to remit contributions to the Fund on behalf of covered employees.  (Id.; Declaration of Sharon Huang, dated July 2, 2019 ("Huang Decl."), Dkt. No. 9-7, ¶¶ 3-4, Ex. 1.)

By letter dated December 19, 2017, the Trustees informed Cancro that, effective immediately, they disclaimed any interest in representing Cancro's employees, thereby effecting a complete withdrawal from the Fund within the meaning of ERISA § 4203, 29 U.S.C. § 1383(a).  (Compl. ¶ 13; Huang Decl. ¶ 5, Ex. 2.)  In accordance with ERISA § 4219(b)(1) and (c)(1), 29 U.S.C. §§ 1399(b)(1) and (c)(1), by certified letter dated June 14, 2018, the Fund provided Cancro with a calculation of its withdrawal liability in the amount of $200,567 to be paid in 240 installments of $316, commencing on or before August 14, 2018.  (See Huang Decl. ¶ 6, Ex. 3.)  By letter dated July 19, 2018, Cancro alleged that it had no assets.  (Id., Ex. 4.)

When it did not receive the payment due on August 14, 2018, the Fund notified Cancro that it was in default of its withdrawal liability obligations, and offered it an opportunity to cure the default within sixty days.  (Id. ¶ 7, Ex. 5.)  Cancro did not remit any payment, and by certified letter dated October 19, 2018, the Fund notified Cancro that it remained in default of its withdrawal liability obligations, and that the Trustees had elected to accelerate Cancro's withdrawal liability and to assess interest on the total outstanding amount.  (Id. ¶ 8, Ex. 6.)  On December 28, 2018, the Trustees commenced this lawsuit, alleging that Cancro has not made any withdrawal liability payments.  (Compl. ¶ 17.)  Upon plaintiffs' application, and in light of

2

defendant's failure to appear or otherwise defend this action, the Clerk of the Court noted

Cancro's default on April 22, 2019.  (See Clerk's Entry of Default, dated Apr. 22, 2019, Dkt. No.

8.)

**DISCUSSION**

A. Standard of Review

Once found to be in default, a defendant is deemed to have admitted all of the

well-pleaded allegations in the complaint pertaining to liability.  See Cement & Concrete

Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d

Cir. 2012) (citation omitted); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d

155, 158 (2d Cir. 1992); Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d

177, 188 (E.D.N.Y. 2009).  "Nevertheless, it remains for the court to consider whether the

unchallenged facts constitute a legitimate cause of action, since a party in default does not admit

conclusions of law."  LaBarbera v. ASTC Labs., Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010)

(internal quotation marks omitted); accord Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65

(2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether

plaintiff has stated a cause of action).

B.  Applicable Law

The statutory scheme for determining an employer's liability for unfunded vested

benefits was succinctly summarized in Amalgamated Lithographers of America v. Unz & Co.,

670 F. Supp. 2d 214 (S.D.N.Y. 2009):

> When an employer withdraws from a plan . . ., the plan sponsor must
> determine the amount of liability and notify the employer of the amount.
> 29 U.S.C. § 1382.  The employer must be notified "as soon as practicable"
> after withdrawal, and the notice must include the amount of the liability, a
> schedule for liability payments, and a demand for payment in accordance
> with the schedule.  29 U.S.C. § 1399(b)(1).  Once the employer receives

> notice, it must begin payment in accordance with the schedule within 60 days, "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2)
> . . . .
> Any dispute concerning the plan's assessment of liability must be settled through arbitration. 29 U.S.C. § 1401(a)(1). . . . If no arbitration proceeding is initiated within [the time frames provided by statute], then the amount demanded by the plan becomes final and must be paid in accordance with the schedule provided by the plan. 29 U.S.C. § 1401(b)(1). Failure to demand arbitration within the statutory time frame bars the employer from contesting liability for the amount demanded. 29 U.S.C. § 1401(a)(1), (b)(1); ILGWU National Retirement Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 885–87 (2d Cir. 1988).
> If the employer defaults in making payments pursuant to the schedule, the plan may require immediate payment of the entire unpaid amount of the employer's withdrawal liability, plus accrued interest on the total outstanding liability from the date of the first scheduled payment that was not timely made. 29 U.S.C. § 1399(c)(5).

Id. at 221–22.

Thus, "[w]ithdrawal liability represents the withdrawing employer's proportionate share of the pension plan's unfunded vested benefits." Gesualdi v. Scara-Mix, Inc., 14 CV 765, 2017 WL 9485710, at *3 (E.D.N.Y. Feb. 7, 2017) (quotation marks and internal citations omitted), report and recommendation adopted, 2017 WL 945090 (E.D.N.Y. Mar. 10, 2017); see also Bowers v. Andrew Weir Shipping, Ltd., 810 F. Supp. 522, 524 n.1 (S.D.N.Y. 1992) (citing 29 U.S.C. §§ 1381, 1391), amended, 817 F. Supp. 4 (S.D.N.Y. 1993), aff'd, 27 F.3d 800 (2d Cir. 1994). Following an employer's withdrawal from a multiemployer pension plan, the plan sponsor has authority to determine the amount of withdrawal liability, notify the employer of the amount, and collect that amount from the employer. Bd. of Trs. of the UFCW Local 50 Pension Fund v. Baker Hill Packing Inc., No. 13 CV 1888, 2015 WL 867013, at *6 (E.D.N.Y. Feb. 27, 2015) (citing 29 U.S.C. §§ 1382, 1399); Gesualdi, 2017 WL 9485710, at *12. Within sixty days after receiving such notice, the employer must make payments in accordance with the plan sponsor's payment schedule. Baker Hill Packing Inc., 2015 WL 867013, at *6.

C. Liability

Plaintiffs have established defendant's liability as a matter of law.  As stated above, on December 19, 2017, the Fund informed Cancro that it had disclaimed any interest in representing Cancro's employees, thereby effecting a complete withdrawal from the Fund within the meaning of 29 U.S.C. § 1383(a).  (Compl. ¶ 13; Huang Decl. ¶ 5, Ex. 2.)  As a result, Cancro became obligated to pay withdrawal liability pursuant to 29 U.S.C. §§ 1399(b)(1) and (c)(2).  (Compl. ¶ 14.)  Thereafter, the Fund notified defendant of the amount of its withdrawal liability and set a payment schedule.  (See id.; Huang Decl. ¶ 6, Ex. 3.)  When those payments were missed, the Fund warned defendant that failure to cure within sixty days would result in defendant's default, and that the entire amount of withdrawal liability would in that event be immediately due and owing.  (Compl. ¶ 15; Huang Decl. ¶ 8, Ex. 6.)  Plaintiffs assert that defendant has not made any payments to date.  (Compl. ¶ 17.)  Plaintiffs have thus established the elements of their claim for withdrawal liability.

D. Damages

While the allegations of a complaint pertaining to liability are deemed admitted upon entry of default, allegations relating to damages are not.  See Greyhound Exhibitgroup, 973 F.2d at 158.  Rather, a court must ensure that there is a basis for the damages sought before entering judgment in the amount demanded.  See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).  A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  See FED. R. CIV. P. 55(b)(2); Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991)(holding that a court is not required to conduct a hearing to determine the basis for damages in every case); Fustok, 873 F.2d at 40 (noting that a court may rely on detailed affidavits and documentary

5

evidence as the basis for determining damages to be awarded in a default judgment).  For the following reasons, I conclude that a hearing on the issue of damages is unwarranted and I respectfully recommend that plaintiffs be awarded the principal amount of withdrawal liability they claim, together with interest, liquidated damages, and attorney's fees and costs as calculated below.

1. *Principal Amount of Withdrawal Liability*

ERISA provides that "[a]s soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall (A) notify the employer of (i) the amount of the liability, and (ii) the schedule for liability payments, and (B) demand payment in accordance with the schedule." 29 U.S.C. § 1399(b)(1).  Plaintiffs did so by letters dated December 19, 2017 and June 14, 2018.  Although an employer that receives notice of an amount due pursuant to § 1399(b)(1) may "ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments," 29 U.S.C. § 1399(b)(2)(A)(i), there is no indication that Cancro sought any review here.

ERISA further provides that:

(a)(1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration.  Either party may initiate the arbitration proceeding within a 60-day period after the earlier of --
(A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or
(B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title. . . .
(b)(1) If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

29 U.S.C. § 1401(a), (b).

The purpose of the notice requirement is to afford an employer the "opportunity to contest the determination and, if necessary, seek arbitration." Canario v. Lidelco, Inc., 782 F. Supp. 749, 753 (E.D.N.Y. 1992). Pursuant to 29 U.S.C. § 1401(a)(1), "[a]ny dispute between an employer and the plan sponsor . . . concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." If an employer fails to timely initiate arbitration, it "operates as a waiver of arbitration, thereby fixing the withdrawal liability and foreclosing any challenge to its imposition." Bowers v. Greenpoint Warehousing & Distribution Servs., Inc., No. 91 CV 3784, 1992 WL 110756, at *2 (S.D.N.Y. May 5, 1992) (citing ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 881-82, 887 (2d Cir. 1988), and Bowers v. Transp. Maritima Mexicana, S.A., 901 F.2d 258, 263 (2d Cir. 1990)). In the present action, Cancro did not request any review of the Fund's determination that it had effected a complete withdrawal from the Fund or the amount of the resulting withdrawal liability; nor did it initiate any arbitration proceeding to contest any aspect of the Fund's determination. (Huang Decl. ¶ 10.) Therefore, withdrawal liability in the amount of $200,567, as determined by the Fund, is fixed and incontestable. See, e.g., Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co., Inc., 270 F. Supp. 3d 593, 613 (E.D.N.Y. 2017) ("[W]here, as here, the damages sought consist, in part, of delinquent withdrawal liability payments and where the employer has otherwise failed to timely request arbitration, courts have the discretion to 'adopt the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated.'") (alterations omitted) (quoting LaBarbera v. United Crane & Rigging Servs., Inc., Nos. 08 CV 3274, 08 CV 3983, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011) (citing cases)); Baker Hill Packing Inc., 2015 WL 867013, at *7 ("[I]f an employer fails to initiate the

7

arbitration process to contest the amount of withdrawal liability assessed against it, the employer

has waived its right to arbitration, and a federal court will not make an independent

determination that the plan sponsor's assessment was unreasonable." (quoting Vacca v. Bridge

Chrysler Jeep Dodge, Inc., No. 06 CV 3543, 2008 WL 4426875, at *6 (E.D.N.Y. Sept. 4, 2008));

United Crane & Rigging Servs., 2011 WL 1303146, at *5 ("The law is unforgiving where, as

here, an employer fails to take action in a timely manner after being notified. [ ] Any dispute

concerning the plan's assessment of liability had to be settled through arbitration, and an

employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper

notification will result in the court's adoption of the sum proffered by the plan, even in the

absence of documentation as to how the figure was calculated."). Accordingly, I respectfully

recommend that plaintiff be awarded $200,567 on its claim for unpaid withdrawal liability.

> 2. *Interest*

The failure of an employer to "make any withdrawal liability payment within the

time prescribed shall be treated in the same manner as a delinquent contribution."  29 U.S.C. §

1451(b); D & A Bus Co., 270 F. Supp. 3d at 614.  Thus, the damages that may be assessed

against an employer that has not made withdrawal liability payments include the following:

> (A) the unpaid [withdrawal liability],
> (B) interest on the unpaid [withdrawal liability],
> (C) an amount equal to the greater of –
> (i) interest on the unpaid [withdrawal liability], or
> (ii) liquidated damages provided for under the plan in an amount
> not in excess of 20 percent . . . of the amount determined by the
> court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by
> the defendant, and
> (E) such other legal or equitable relief as the court deems
> appropriate.

29 U.S.C. § 1132(g)(2).

Plaintiffs request interest accrued through July 1, 2019 in the amount of

$14,684.34. (Huang Decl. ¶ 13.) Interest on unpaid withdrawal liability is calculated "using the

rate provided for under the plan, or, if none, the rate prescribed under section 6621 of title 26."

29 U.S.C. § 1132(g)(2); Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension

Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1506 (2d Cir. 1995). Pursuant

to the authority delegated to the Trustees under Article V of the Agreement and Declaration of

Trust Establishing the Local 1034 Pension Trust Fund, the Trustees have adopted Withdrawal

Liability Procedures to govern the assessment and collection of withdrawal liability. (Huang

Decl. ¶ 12, Ex. 7.) Section 10 of the Withdrawal Liability Procedures provides that if withdrawal

liability payments are not made when due, "interest on the payment shall accrue from the due

date until the date on which the payment is made . . . at the rate established by the Pension

Benefit Guaranty Corporation ('PBGC') pursuant to Section 4219(c)(6) of ERISA or at the

prime rate, plus 3%, whichever is greater." [2] (Huang Decl. ¶ 13, Ex. 8.)

The Fund's actuarial firm has calculated interest on the unpaid withdrawal

liability and has determined that the accrued interest due from August 14, 2018 through July 1,

2019 totals $14,684.34. (Id. ¶ 13.) However, the Fund's Administrator does not indicate how

that figure was calculated and plaintiffs provide no supporting documentation to substantiate the

actuarial firm's determination. This is "regrettable because the court is deprived of a meaningful

opportunity" to validate this aspect of plaintiffs' damages. See Baker Hill Packing Inc., 2015

---

[2] From August 14, 2018 to December 31, 2018, the PBGC rate was five percent. From January 1, 2019 to March 31, 2019 it was 5.25 percent, and from April 1, 2019 to July 1, 2019 it was 5.5 percent. See Pension Benefit Guaranty Corp., http://www.pbgc.gov/prac/interest/oodwl.html. For the same time period, the prime rate has fluctuated between five percent and 5.5 percent. See https://www.hsh.com/indices/prime-rate.html. Therefore, the prime rate plus three percent is the higher rate.

WL 867013, at *11 (citing <u>Daniello v. Planned Sys. Integration</u>, 07 CV 1729, 2009 U.S. Dist.

LEXIS 132835, at *10 (E.D.N.Y. June 25, 2009), <u>report and recommendation adopted</u>, 2009

U.S. Dist. LEXIS 61387 (E.D.N.Y. July 17, 2009)).  Nonetheless, based on the court's rough

calculations, the $14,684.34 figure appears accurate.[3]  I will therefore accept the actuarial firm's

computation and recommend that plaintiffs be awarded $14,684.34 in interest, with the caveat

that plaintiffs should provide substantiating documentation in future cases.[4]

        3.  *Liquidated Damages*

        As noted above, ERISA provides for liquidated damages "in an amount equal to

the greater of . . . interest on the unpaid contributions, or . . . liquidated damages provided for

under the plan in an amount not in excess of 20 percent" of the unpaid contributions.  29 U.S.C.

§ 1132(g)(2)(C).  Section 11 of the Withdrawal Liability Procedures provides that any judgment

entered in a suit to collect the outstanding balance of withdrawal liability shall include

"liquidated damages equal to the greater of the interest due or 20% of the principal due."  (Huang

Decl. ¶ 14, Ex. 7.)  Thus, liquidated damages in the total amount of $40,113.40 are also due and

owing to the Fund.

---

[3]  To determine a per diem rate of interest, one would multiply the delinquent withdrawal
liability (in this case, $200,567) by a yearly interest rate (here, between eight and 8.5 percent, or
about .085) to get the yearly interest (approximately $17,048.195).  Dividing that figure by 365
days yields a per diem rate of $46.70.  There are 321 days between August 14, 2018 and July 1,
2019.  $46.70 x 321 = $14,990.70, which is slightly more than plaintiffs request.

[4]  Plaintiffs have only requested accrued interest through July 1, 2019.  Since defendant's
withdrawal liability remains delinquent, daily interest should continue to accrue until judgment is
entered.  If plaintiffs wish to request interest for July 1, 2019 through the date of judgment, they
must provide the court with an accurate per diem interest rate.

4. *Attorney's Fees and Costs*

Plaintiffs seek to recover their attorney's fees and costs.  (Compl. ¶ 19; Plaintiffs'

Memorandum of Law in Support of Motion for Entry of Default Judgment, dated July 3, 2019

("Pls.' Mem."), Dkt. No. 9-1, at 7; Declaration of Neil V. Shah, Esq., dated July 3, 2019 ("Shah

Decl."), Dkt. No. 9-2, ¶¶ 19–24.)  An award of attorney's fees under ERISA is mandatory.  29

U.S.C. § 1132(g)(2)(D); Hudson Steel Fabricators & Erectors, Inc., 68 F.3d at 1506; Bd. of Trs.

of UFCW Local 342 Pension Fund v. Merrick Associated Mkt., Inc., No. 11 CV 4310, 2012 WL

4049845, at *2 (E.D.N.Y. Aug. 21, 2012), report and recommendation adopted, 2012 WL

4049996 (E.D.N.Y. Sept. 13, 2012).

In the Second Circuit, courts calculate a "presumptively reasonable fee" by taking

the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a

reasonable, paying client would be willing to pay."  Arbor Hill Concerned Citizens

Neighborhood Assoc. v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008) (internal

quotations omitted).  In performing this analysis, the court has "considerable discretion."  Id. at

190.  Claims for attorney's fees in the Second Circuit generally must be supported by

contemporaneous time records which "specify, for each attorney, the date, the hours expended,

and the nature of the work done."  New York State Ass'n for Retarded Children, Inc. v. Carey,

711 F.2d 1136, 1148 (2d Cir. 1983).

To determine what constitutes a reasonable hourly rate, this court looks to the

hourly rates that attorneys routinely charge for comparable work in the Eastern District of New

York.  Local No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Tr. Fund v.

Crops Design Corp., No. 12 CV 4218, 2013 WL 5460871, at *6 (E.D.N.Y. Sept. 30, 2013).  In

this district, the prevailing hourly rates are "generally between $300 and $400 for law firm

11

partners, $200 to $300 for senior associates, and $100 to $200 for junior associates." <u>LG Capital Funding, LLC v. 5Barz Int'l, Inc.</u>, No. 16 CV 2752, 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019) (citing <u>Tacuri v. Nithin Constr. Co.</u>, No. 14 CV 2908, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015)); <u>see also</u> <u>Cabrera v. Schafer</u>, No. 12 CV 6323, 2017 WL 9512409, at *11 (E.D.N.Y. Feb. 17, 2017), <u>report and recommendation adopted</u>, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017); <u>Gesualdi v. Lubco Transp. Inc.</u>, No. 15 CV 6727, 2017 WL 946297, at *4 (E.D.N.Y. Feb. 22, 2017).  Courts have also recognized "the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of the typical ranges." <u>Gesualdi</u>, 2017 WL 946297, at *4 (internal quotation marks omitted).

Plaintiffs have submitted time records that indicate the date, duration, and nature of the work performed by their counsel.  (Shah Decl., Ex. 4 ("Timesheets"), Dkt. No. 9-6.) Plaintiffs request a "blended rate" of $325 per hour for time expended by their attorneys and $125 per hour for time spent by support staff, resulting in a total of $10,487.50 in attorney's fees. (Shah Decl. ¶¶ 23-24.)

Four attorneys from the law firm Proskauer Rose LLP worked on this case: Anthony Cacace, Esq., Neil V. Shah, Esq., Anastasia S. Gellman, Esq., and Nanci R. Hamilton, Esq.  (Shah Decl. ¶¶ 23–24.)  Mr. Cacace worked on the case for 1.75 hours, Mr. Shah worked on the case for 10.75 hours, Ms. Gellman worked on the case for 7.50 hours, and Ms. Hamilton worked on the case for 9 hours.  (<u>Id.</u> ¶ 23, Ex. 4.)  In addition, four members of the firm's support staff worked on the case for a total of 8.5 hours.  (<u>Id.</u>)

Mr. Shah has been practicing law since 2010 and has approximately four years of experience "litigating all aspects of ERISA matters."  (<u>Id.</u> ¶ 20.)  While stating that the attorneys in this matter are "members of Proskauer's dedicated ERISA litigation practice group," counsel

12

has not provided the court with any information about the other lawyers.  (See id. ¶¶ 21, 23.)

Regardless, the firm's website indicates that Mr. Cacace is a partner, Ms. Gellman is a senior

associate with about nine years of legal experience, and Ms. Hamilton is a junior associate who

graduated from law school in 2017.  (See https://www.proskauer.com/professionals.)

Despite the attorneys' varying levels of experience and seniority, plaintiffs ask for

an award based upon a "blended rate of $325 per hour" because their law firm "bills the Fund at

a blended rate for all attorney work that is well in excess of the rates requested."  (Shah Decl. ¶

22.)  However, plaintiffs cite no case law to support their request for a blended rate (see Pls.'

Mem. at 8), and courts in this district have rarely approved blended attorney's fees.  See

Demopoulos v. Sweet Clover Farms, Inc., No. 17 CV 7257, 2019 WL 6619352, at *6 n.4

(E.D.N.Y. Oct. 29, 2019) (noting that "blended rates are disfavored"), report and

recommendation adopted, 2019 WL 6615338 (E.D.N.Y. Dec. 5, 2019); Trs. of Leather Goods,

Handbags, & Novelty Workers' Union Local 1 Joint Ret. Fund v. Cent. Fur Storage Co., No. 18

CV 7224, 2019 WL 3937132, at *11 (E.D.N.Y. Aug. 2, 2019) (explaining that the "use of a

'blended rate' is at odds with the 'presumptively reasonable fee' framework, which incorporates

both the rate reasonably billed and the hours reasonably expended."), report and recommendation

adopted, 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019).  In this case, the majority of the legal

work was performed by three associates with differing levels of skill and experience.

Accordingly, I will determine a separate hourly rate for each attorney, bearing in mind the

straightforward nature of this default action.

As mentioned previously, Mr. Cacace is a partner who spent a minimal amount of

time on this case.  (Shah Decl. ¶ 23; Timesheets.)  Accordingly, I respectfully recommend that

Mr. Cacace be awarded $360 an hour.  See Trustees of Leather Goods, Handbags, & Novelty

Workers' Union Local 1 Joint Ret. Fund v. Crossbay Seashell Fish Mkt., Inc., No. 19 CV 1722, 2019 WL 4418884, at \*7 (E.D.N.Y. Aug. 30, 2019) (compensating Proskauer ERISA partner's time at the hourly rate of $360), report and recommendation adopted, 2019 WL 4415621 (E.D.N.Y. Sept. 16, 2019).[5]

With respect to Mr. Shah and Ms. Gellman, the requested rate of $325 is higher than the prevailing rates in this district for attorneys with comparable experience. See Cent. Fur Storage Co., 2019 WL 3937132, at \*12 (awarding Mr. Shah fees at a rate of $250 per hour); Trs. of Local 813 Ins. Tr. Fund v. Personal Touch Funeral Serv., Inc., No. 18 CV 6536, 2019 WL 2295775, at \*3 (E.D.N.Y. May 30, 2019) (reducing Mr. Shah's requested blended hourly rate of $300 to $200). See also D & A Bus Co., Inc., 270 F. Supp. 3d at 622 (noting that courts may take "judicial notice of the rates awarded in prior cases and [rely on their] own familiarity with the rates prevailing in the district" (quoting Farbotko v. Clinton Cty. of New York, 433 F.3d 204, 209 (2d Cir. 2005) (alteration in original)). I therefore recommend that plaintiffs' fee award be calculated at a rate of $250 per hour for Mr. Shah's and Ms. Gellman's time.

Ms. Hamilton's hourly rate should also be reduced to a rate that is within the range for junior attorneys in this district. See Crossbay Seashell Fish Mkt., Inc., 2019 WL 4418884, at \*8 (reducing rate for junior Proskauer associate to $175 per hour); Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation v. Dipizio Constr., Inc., No 15 CV 2592, 2016 WL 3033722, at \*6 (E.D.N.Y. May 25, 2016) (reducing requested hourly rate from $225 to $100 for attorney who had graduated from law school two years prior).

---

[5]   But see Cent. Fur Storage Co., 2019 WL 3937132, at \*12 (finding $300 hourly rate for Proskauer partner reasonable in ERISA default judgment matter).

Accordingly, I respectfully recommend awarding $175 per hour for work performed by Ms. Hamilton.

The requested hourly rate of $125 is also higher than is reasonable for work performed by a legal assistant and litigation support staff.  An award based upon $95 per hour is more appropriate.  See Gesualdi v. Town Holding Corp., No. 18 CV 5744, 2019 WL 5693803, at *7 (E.D.N.Y. Aug. 15, 2019) (awarding fees at a rate of $95 per hour for paralegal work); Trs. of Local 7 Tile Indus. Welfare Fund v. Larsen Marble & Tile, LLC, No. 18 CV 1025, 2018 WL 6344188, at *1 (E.D.N.Y. Dec. 5, 2018) (approving $90 per hour for work done by legal assistants); New York City Dist. Council of Carpenters v. Trs. of New York City Dist. Council of Carpenters Welfare Fund, No. 16 CV 3429, 2018 WL 3768586, at *5 (E.D.N.Y. July 23, 2018) (recommending lowering hourly rate for legal assistants from $100 to $90), report and recommendation adopted sub nom. Trs. of New York City Dist. Council of Carpenters Welfare Fund v. Best Made Floors, Inc., 2018 WL 3785331 (E.D.N.Y. Aug. 8, 2018); see also Goodwin v. Hawker Dayton Corp., No. 19 CV 4284, 2019 WL 6223955, at *7 (S.D.N.Y. Nov. 22, 2019) (awarding hourly rate of $75 in ERISA withdrawal case "[i]n light of the fact that no special expertise has been attributed to the law clerk or paralegal and that this was a simple case arising in the context of a default judgment.").

Finally, it was reasonable for counsel to devote twenty-nine attorney hours and 8.5 support staff hours to this case.  Gesualdi v. Fortunata Carting, Inc., 5 F. Supp. 3d 262, 281 (E.D.N.Y. 2014) ("Courts have found that 25 hours is a typical amount of time to spend on a straightforward ERISA default case."); Ferrara v. Metro D Excavation & Found., Inc., No. 10 CV 4215, 2011 WL 3610896, at *7 (E.D.N.Y. July 7, 2011) (approving 32.1 hours), report and recommendation adopted, 2011 WL 3625448 (E.D.N.Y. Aug. 16, 2011).

For the reasons stated above, I respectfully recommend that plaintiffs be awarded $7,575 in attorney's fees, as follows:

| Name | # of Hours | Hourly Rate | Amount |
|---|---|---|---|
| Anthony Cacace | 1.75 | $360 | $630 |
| Neil V. Shah | 10.75 | $250 | $2,687.50 |
| Anastasia S. Gellman | 7.50 | $250 | $1,875 |
| Nanci R. Hamilton | 9.00 | $175 | $1,575 |
| Megan K. Cutaia | 5.75 | $95 | $546.25 |
| Allen F. Healy | 1.50 | $95 | $ 142.50 |
| Anthony Lopez | 0.50 | $95 | $47.50 |
| Mary Jane F. McAleavy | 0.75 | $95 | $71.25 |
| TOTAL | 37.50 | | $7,575 |

Plaintiffs also seek reimbursement of costs in the amount of $1,806.54. (Shah Decl. ¶ 25.)  29 U.S.C. § 1132(g)(2)(D) directs a court to award reasonable costs when "a judgment in favor of the plan is awarded."  Plaintiffs who prevail in an action under ERISA are entitled to "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." Trs. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(K) Sav. Plan v. Temperini Mech., Inc., No. 12 CV 5646, 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg, No. 08 CV 884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)).  In this case, those costs include the $400 filing fee, $253.80 in process server fees, $28.50 for delivery services, and $1,124.24 for "Professional Services."

16

(See Shah Decl., Ex. 4.)  The filing fee, process server, and delivery costs are reasonable.  See, e.g., U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc., No. 12 CV 8753, 2013 WL 5363777, at *8 (S.D.N.Y. Sept. 26, 2013) (awarding costs for filing fees, copies, research, travel, and service of process).  However, counsel has provided no information or documentation concerning the "Professional Services," and I therefore recommend that $1,124.24 of the amount sought be denied.  In sum, I recommend that plaintiffs be awarded $682.30 in costs.

## CONCLUSION

For the reasons explained above, I respectfully recommend that plaintiffs' motion for a default judgment be granted and that plaintiffs be awarded (a) $200,567 in unpaid withdrawal liability; (b) $14,684.34 in interest; (c) $40,113.40 in liquidated damages, (d) $7,575 in attorney's fees, and (e) $682.30 in costs, for a total of $263,622.04.  Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Amon and to my chambers within fourteen (14) days.  Failure to file objections in a timely manner may waive a right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72.

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
        December 18, 2019